UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: __7/22/13___
```

NICHOLAS A. FLORIO,                          :

                    Plaintiff,               :              12 Civ. 8348 (AJP)

        -against-                            :              **OPINION AND ORDER**

DEPUTY OF SECURITY MS. CANTY and             :
CORRECTION OFFICER MS. LEACH,
                                             :
                    Defendants.
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ANDREW J. PECK, United States Magistrate Judge:**

        Pro se plaintiff Nicholas Florio brings this § 1983 action alleging violations of his

federal constitutional rights by defendants Deputy Warden Canty and Correction Officer Leach

arising out of alleged conditions of his confinement at the Anna M. Kross Center ("AMKC") on

Rikers Island. (Dkt. No. 2: Compl.)  Presently before the Court is defendants' motion to dismiss

pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 14: Notice of Motion.)  The parties have consented

to decision of this action by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 18.)  For

the reasons set forth below, defendants' motion is GRANTED and the case is dismissed.

## FACTS

        In April 2012, Florio was an inmate at AMKC where he occupied a cell on the lower

level of Quad 9 ("9-lower"). (Dkt. No. 2: Compl. ¶¶ II.A-II.C.) On April 13, 2012 at 3:00 p.m. the

toilet in Florio's cell and approximately twenty other toilets on 9-lower began "overflowing with

human waste." (Compl. at p. 4;[1] Compl. Ex. A: 4/21/12 Grievance; Compl. Ex. B: Ortega Aff. ¶

1.) Florio yelled to be let out of his cell but ten to twenty minutes passed before an officer released

---

[1]      References to the pages of the complaint are to the ECF header page numbers.

him. (Compl. at p. 4 & Ex. B: Ortega Aff. ¶ 1: "The defendant . . . let plaintiff and about 25 other inmates out 10 to 20 min[utes] later.")  Florio "was order[ed] to walk in the human waste that was ankle high so [his] pants, socks, and shoes became soaking wet with human waste."  (Compl. at p. 4 & Ex. A: 4/21/12 Greivance; Compl. Ex. B: Ortega Aff. ¶ 1.)  Florio was given "yellow gloves, dustpans, mopbuckets, and one vacuum cleaner" and was ordered "to clean the human waste up or live in th[e] unhealthy and unsafe conditions." (Compl. at p. 4 & Ex. B: Ortega Aff. ¶ 1.)

Florio twice requested to be moved to another housing unit but was told "there is a chain of command to move 31 inmates out [of] a whole housing unit" and "this is the weekend no one is moving out." (Compl. at p. 4 & Ex. B: Ortega Aff. ¶ 2.)  Three days later, while Deputy Warden Canty was making rounds, Florio asked her if he could be moved "d[ue] to the inad[e]quate plum[]bing and [her] subordinates not doing something." (Compl. at p. 4.)  Deputy Warden Canty "replied, with a smirk [that] if this happens again we will move 9-lower to 9-upper so you can flood them out with human waste." (Compl. at p. 4.)

On April 20, 2012, seven days after the first overflow incident, Florio's toilet and approximately twenty other toilets on 9-lower again overflowed with waste.  (Compl. at pp. 2, 4 & Ex. A: 4/21/12 Grievance; Compl. Ex. B: Ortega Aff. ¶ 3; Compl. Ex. C: 4/26/12 Notice of Claim ¶ 3.)  When Florio yelled to be let out, Officer Leach told him "to hold on." (Compl. at p. 4 & Ex. B: Ortega Aff. ¶ 3; Compl. Ex. C: 4/26/12 Notice of Claim ¶ 3.)  "By the time [Officer Leach] let [Florio] out the tier was flooded again with human waste." (Compl. at p. 4 & Ex. B: Ortega Aff. ¶ 3; Compl. Ex. C: 4/26/12 Notice of Claim ¶ 3.)[2]  Florio again had to walk through the sewage to exit

---

[2]    While Florio did not allege how much time elapsed before he was let out of his cell, he indicated in his April 26, 2012 Notice of Claim that he was "locked in for about thirty minutes before let out." (Compl. Ex. C: 4/26/12 Notice of Claim ¶ 3.)

his cell, and then he and the other 9-lower inmates were moved to the gym. (Compl. at p. 4 & Ex. A: 4/21/12 Grievance; Compl. Ex. B: Ortega Aff. ¶ 3; Compl. Ex. C: 4/26/12 Notice of Claim ¶ 3.)[3/]

Florio claims that as a result of these incidents he suffered a fungal infection on his feet and hypertrophy of his toenails. (Compl. ¶ III & Ex. C: 4/26/12 Notice of Claim ¶ 4; Compl. Exs. G & G2: 4/23/12 & 4/26/12 Health Servs. Reports.) Florio filed a grievance on April 21, 2012, complaining that his "feet [we]re itching and red" because he had been required "to step in feces and urine due to human waste water coming from back[ed] up toilets in Quad 9 Lower." (Compl. ¶ IV.E & Ex. A: 4/21/12 Grievance.) Two days later Florio saw a doctor who prescribed a topical cream for the foot fungus. (Compl. ¶ III & Exs. G & G2: 4/23/12 & 4/26/12 Health Servs. Reports.) Three days after that, the doctor referred Florio to a podiatrist for the hypertrophy. (Compl. ¶ III & Ex. G2: 4/26/12 Health Servs. Report.)

## ANALYSIS

## I.   THE STANDARDS GOVERNING A MOTION TO DISMISS

### A.   The Twombly-Iqbal "Plausibility" Standard

In two decisions in 2007 and 2009, the Supreme Court significantly clarified the standard for a motion to dismiss, as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in <u>Twombly</u>, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it <u>demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation</u>. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

---

[3/]   Although Florio's complaint is silent on the events following this incident, one of his supporting documents indicates that the inmates "pack[ed their] stuff to [go to] the gym" and were thereafter "moved to a new housing area." (Compl. Ex. B: Ortega Aff. ¶ 3.)

To survive a motion to dismiss, <u>a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."</u> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Two working principles underlie our decision in <u>Twombly</u>. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. <u>Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.</u> Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. <u>Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.</u> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 677-79, 129 S. Ct. 1937, 1949-50 (2009) (citations omitted & emphasis added) (quoting <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 556-57, 570, 127 S. Ct. 1955, 1965-66, 1974 (2007) (retiring the <u>Conley</u> v. <u>Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), pleading standard that required denying a Rule 12(b)(6) motion to dismiss "unless it appears beyond

5

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief")).[4]

Even after Twombly and Iqbal, the Court's role in deciding a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Bison Capital Corp. v. ATP Oil & Gas Corp., 10 Civ. 0714, 2010 WL 2697121 at *5 (S.D.N.Y. June 24, 2010) (Peck, M.J.) (quotations omitted), report & rec. adopted, 2010 WL 3733927 (S.D.N.Y. Sept. 16, 2010).[5]

The Court must construe a pro se complaint liberally and must use less stringent standards when reviewing a pro se complaint than if the complaint had been drafted by counsel. See, e.g., Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013); Cancel v. Home Depot, 488 F. App'x at 521; Spataro v. Glenwood Supply, 479 F. App'x at 404; Ercole v. LaHood, 472 F. App'x 47, 48

---

[4]   Accord, e.g., Cancel v. Home Depot, 488 F. App'x 520, 520 (2d Cir. 2012); Spataro v. Glenwood Supply, 479 F. App'x 403, 404 (2d Cir. 2012); Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010), cert. denied, 131 S. Ct. 901 (2011); Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009); Mahoney v. Sony Music Entm't, 12 Civ. 5045, 2013 WL 491526 at *4-5 (S.D.N.Y. Feb. 11, 2013) (Peck, M.J.); Toto, Inc. v. Sony Music Entm't, 12 Civ. 1434, 2012 WL 6136365 at *5 (S.D.N.Y. Dec. 11, 2012) (Peck, M.J.), report & rec. adopted, 2013 WL 163826 (S.D.N.Y. Jan. 15, 2013); Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc., 898 F. Supp. 2d 673, 683 (S.D.N.Y. 2012); Jones v. N.Y. Dep't of Corr. (DOC) Jail, 11 Civ. 4477, 2011 WL 5865143 at *1-2 (S.D.N.Y. Nov. 22, 2011) (Peck, M.J.), report & rec. adopted, 2012 WL 1232963 (S.D.N.Y. Apr. 12, 2012); Lindner v. IBM Corp., 06 Civ. 4751, 2008 WL 2461934 at *3 (S.D.N.Y. June 18, 2008); Joseph v. Terrence Cardinal Cooke Health Care Ctr., 07 Civ. 9325, 2008 WL 892508 at *1 (S.D.N.Y. Apr. 2, 2008); Elektra Entm't Grp., Inc. v. Barker, 551 F. Supp. 2d 234, 237 (S.D.N.Y. 2008); Edison Fund v. Cogent Inv. Strategies Fund, Ltd., 551 F. Supp. 2d 210, 216-17 (S.D.N.Y. 2008); Diana Allen Life Ins. Trust v. BP P.L.C., 06 Civ. 14209, 2008 WL 878190 at *3 (S.D.N.Y. Mar. 31, 2008).

[5]   Accord, e.g., Tasini v. AOL, Inc., 851 F. Supp. 2d 734, 737 (S.D.N.Y.) ("The Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'"), aff'd, 505 F. App'x 45 (2d Cir. 2012); Saunders v. Coughlin, 92 Civ. 4289, 1994 WL 88108 at *2 (S.D.N.Y. Mar. 15, 1994) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)).

(2d Cir. 2012), cert. denied, 133 S. Ct. 1479 (2013); Harris v. Mills, 572 F.3d at 72; LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991).[6/] However, "[d]ismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief." 2 Moore's Federal Practice § 12.34[4][a] at 12-99 (2012). Thus, the "'duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.'" Id. § 12.34[1][b] at 12-79.[7/]

## B.    Consideration Of Documents Attached To The Complaint

A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading. Thus, in deciding such a motion to dismiss, "the Court must limit its analysis to the four corners of the complaint." Vassilatos v. Ceram Tech Int'l, Ltd., 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y. May 19, 1993) (citing Kopec v. Coughlin, 922 F.2d 152, 154-55 (2d Cir. 1991)).[8/] The Court,

---

[6/]    See also, e.g., Taylor v. Fresh Direct, 12 Civ. 2084, 2012 WL 6053712 at *3 (S.D.N.Y. Dec. 5, 2012) (Peck, M.J.), report & rec. adopted, 2013 WL 1897778 (S.D.N.Y. May 7, 2013); Inesti v. Hicks, 11 Civ. 2596, 2012 WL 2362626 at *6 (S.D.N.Y. June 22, 2012) (Peck, M.J.), report & rec. adopted, 2012 WL 3822224 (S.D.N.Y. Sept. 4, 2012); Scherman v. N.Y.S. Banking Dep't, 09 Civ. 2476, 2010 WL 997378 at *4 (S.D.N.Y. Mar. 19, 2010) (Peck, M.J.), aff'd, 443 F. App'x 600 (2d Cir. 2011); Wong v. Health First Inc., 04 Civ. 10061, 2005 WL 1676705 at *3 (S.D.N.Y. July 19, 2005) (Peck, M.J.), report & rec. adopted, 2006 WL 2457944 (S.D.N.Y. Aug. 23, 2006); Watson v. McGinnis, 964 F. Supp. 127, 131 (S.D.N.Y. 1997) (Kaplan, D.J. & Peck, M.J.); Saunders v. Coughlin, 1994 WL 88108 at *2 (citing Hughes v. Rowe, 449 U.S. 5, 101 S. Ct. 173 (1980)).

[7/]    Accord, e.g., Walker v. Schult, 717 F.3d at 124; Taylor v. Fresh Direct, 2012 WL 6053712 at *3; Inesti v. Hicks, 2012 WL 2362626 at *6; Scherman v. N.Y.S. Banking Dep't, 2010 WL 997378 at *4; Wong v. Health First Inc., 2005 WL 1676705 at *3; Joyner v. Greiner, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002) (action dismissed because pro se plaintiff "failed to allege facts tending to establish" that defendants violated his constitutional rights).

[8/]    Accord, e.g., Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006); Aniero Concrete Co. v. N.Y.C. Constr. Auth., 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp., 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar. 9, 2000) ("When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein.").

(continued...)

however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference.  E.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."); Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . .").[9]

"However, before materials outside the record may become the basis for a dismissal, several conditions must be met.  For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exists no material disputed issue of fact regarding the relevance of the document."  Faulkner v. Beer, 463 F.3d at 134 (citations omitted).  In this case, the

---

[8]     (...continued)
When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56.  See Fed. R. Civ. P. 12(b); Friedl v. City of N.Y., 210 F.3d 79, 83 (2d Cir. 2000); Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988).

[9]     See also, e.g., Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960, 112 S. Ct. 1561 (1992)); Paulemon v. Tobin, 30 F.3d 307, 308-09 (2d Cir. 1994); Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); In re Lehman Bros. Sec. & ERISA Litig., 903 F. Supp. 2d 152, 168-69 (S.D.N.Y. 2012) (quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d at 98); Drum Major Music Entm't Inc. v. Young Money Entm't, LLC, 11 Civ. 1980, 2012 WL 423350 at *2 (S.D.N.Y. Feb. 7, 2012); Maniolos v. United States, 741 F. Supp. 2d 555, 560 (S.D.N.Y. 2010) (Peck, M.J.), aff'd, 469 F. App'x 56 (2d Cir. 2012).

8

documents that Florio attached to his complaint may be considered on the motion to dismiss, subject to the <u>Faulkner</u> v. <u>Beer</u> proviso.

## II.    DEFENDANTS' MOTION TO DISMISS IS GRANTED

### A.    Legal Standards Governing § 1983 Eighth Amendment Deliberate Indifference To Prison Conditions Claims

To prevail in a § 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. <u>See</u> 42 U.S.C. § 1983; <u>West</u> v. <u>Atkins</u>, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988). "Section 1983 itself," however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." <u>Sykes</u> v. <u>James</u>, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), <u>cert. denied</u>, 512 U.S. 1240, 114 S. Ct. 2749 (1994).

The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials and conduct that offends "evolving standards of decency." <u>Hudson</u> v. <u>McMillian</u>, 503 U.S. 1, 5, 8, 112 S. Ct. 995, 998, 1000 (1992).[10]

To establish an Eighth Amendment violation based on a claim that a prison official placed an inmate's health in danger because of prison conditions (such as exposure to waste or other unsanitary conditions), the inmate must show that the prison official acted with "deliberate indifference" to "a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." <u>E.g.</u>, <u>Helling</u> v. <u>McKinney</u>, 509 U.S. 25, 33,

---

[10]    <u>Accord</u>, <u>e.g.</u>, <u>Miller</u> v. <u>Alabama</u>, 132 S. Ct. 2455, 2463 (2012); <u>Hope</u> v. <u>Pelzer</u>, 536 U.S. 730, 737-38, 122 S. Ct. 2508, 2514 (2002); <u>Wilson</u> v. <u>Seiter</u>, 501 U.S. 294, 297, 308, 111 S. Ct. 2321, 2323, 2329 (1991); <u>Estelle</u> v. <u>Gamble</u>, 429 U.S. 97, 102, 104-05, 97 S. Ct. 285, 290, 291 (1976); <u>Gregg</u> v. <u>Georgia</u>, 428 U.S. 153, 173, 96 S. Ct. 2909, 2925 (1976).

9

113 S. Ct. 2475, 2480 (1993); <u>Estelle</u> v. <u>Gamble</u>, 429 U.S. at 104-05, 97 S. Ct. at 291.[11] "It is

undisputed that the treatment a prisoner receives in prison and the conditions under which he is

confined are subject to scrutiny under the Eighth Amendment." <u>Helling</u> v. <u>McKinney</u>, 509 U.S. at

32, 113 S. Ct. at 2480.

As the Second Circuit has explained, "the deliberate indifference standard embodies

both an objective and a subjective prong." <u>Hathaway</u> v. <u>Coughlin</u>, 99 F.3d 550, 553 (2d Cir.

1996).[12]  The objective test as it applies to exposure to unsanitary or unsafe conditions has been

expressed as follows:

> Under the objective element of the test, the measure of a "sufficiently
> serious" deprivation is "contextual and responsive to contemporary standards of
> decency." . . . "[F]or a claim . . . based on a failure to prevent harm, the inmate must
> show that he is incarcerated under conditions posing a substantial risk of serious
> harm." A prisoner need not show actual injury, as "the Eighth Amendment protects
> against sufficiently imminent dangers as well as current unnecessary and wanton
> infliction of pain and suffering." . . . [T]he Eighth Amendment inquiry in plaintiff's
> case focuses on the danger posed by the material itself—that is, whether the nature
> and levels of plaintiff's exposure to toxic or noxious substances was such as to pose
> "an unreasonable risk" of serious damage to the health of any inmate exposed to it.
> This requires a fact-finder to assess
>
>> the seriousness of the potential harm and the likelihood that such injury to
>> health will actually be caused by exposure to [the toxin] . . . [and] whether
>> society considers the risk that the prisoner complains of to be so grave that
>> it violates contemporary standards of decency to expose <u>anyone</u> unwillingly
>> to such a risk.

---

[11]  See also, e.g., <u>Minneci</u> v. <u>Pollard</u>, 132 S. Ct. 617, 625 (2012); <u>Walker</u> v. <u>Schult</u>, 717 F.3d
119, 125 (2d Cir. 2013); <u>Fransua</u> v. <u>Vadlamudi</u>, No. 05-1715, 2008 WL 4810066 at *1 (2d
Cir. Nov. 3, 2008); <u>Salahuddin</u> v. <u>Goord</u>, 467 F.3d 263, 280 (2d Cir. 2006); <u>Smith</u> v.
<u>Carpenter</u>, 316 F.3d 178, 183 (2d Cir. 2003); <u>Selby</u> v. <u>Coombe</u>, 17 F. App'x 36, 37 (2d Cir.
2001) (citing <u>Chance</u> v. <u>Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998)).

[12]  Accord, e.g., <u>Walker</u> v. <u>Schult</u>, 717 F.3d at 125; <u>Cole</u> v. <u>Fischer</u>, 416 F. App'x 111, 113 (2d
Cir. 2011); <u>Goris</u> v. <u>Breslin</u>, 402 F. App'x 582, 584 (2d Cir. 2010); <u>Fransua</u> v. <u>Vadlamudi</u>,
2008 WL 4810066 at *1; <u>Salahuddin</u> v. <u>Goord</u>, 467 F.3d at 279-81; <u>Smith</u> v. <u>Carpenter</u>, 316
F.3d at 183; <u>Selby</u> v. <u>Coombe</u>, 17 F. App'x at 37; <u>Chance</u> v. <u>Armstrong</u>, 143 F.3d at 702.

Jackson v. Goord, 664 F. Supp. 2d 307, 316 (S.D.N.Y. 2009) (citations omitted); see also, e.g.,

Walker v. Schult, 717 F.3d at 125 ("[P]rison officials violate the Constitution when they deprive an

inmate of his 'basic human needs' such as . . . safe and sanitary living conditions.").

> The subjective test as applied to unsanitary conditions is as follows:
>
>> Under the subjective test, a prison official must act with "'deliberate indifference' to inmate health or safety." This means that "a prison official must know of and disregard an excessive risk to inmate health or safety; the official must . . . be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, . . . draw the inference and fail to take reasonable measures to abate it." This element "entails something more than mere negligence . . . but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Plaintiff need not show actual knowledge of the risk of harm, but rather can
>>
>>> present [] evidence showing that a substantial risk . . . was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it.

Jackson v. Goord, 664 F. Supp. 2d at 316-17 (citations omitted); see also, e.g., Walker v. Schult, 717

F.3d at 125.

**B.    Application To Florio's Claims Against Warden Canty And Officer Leach**

Florio claims that he: (1) was exposed to sewage for approximately twenty minutes

on April 13, 2012 and had to walk through it to exit his cell; (2) was required to clean the sewage

without adequate equipment or training; (3) was exposed to sewage for approximately thirty minutes

on April 20, 2012 and again had to walk through it to exit; and (4) contracted a fungal infection on

his feet as a result of walking through human waste.  (See pages 1-3 & n.2 above.)

## 1.    The Eighth Amendment's Objective Requirement

"A Section 1983 claim will not lie for prison conditions that are merely unpleasant.

However, chronic exposure to human waste will give rise to a colorable claim." Ortiz v. Dep't of

Corr., 08 Civ. 2195, 2011 WL 2638137 at *6 (S.D.N.Y. Apr. 29, 2011), report & rec. adopted, 2011

WL 2638140 (S.D.N.Y. July 5, 2011).[13] "On the other hand, where exposure to such waste is

intermittent or limited to a matter of hours, courts normally will not entertain such actions. 'The

Eighth Amendment is generally not violated . . . where unsanitary conditions are temporary.' . . .

Judges in this district have repeatedly declined to find that sporadic or brief exposures to waste

represented cruel and unusual punishment." Ortiz v. Dep't of Corr., 2011 WL 2638137 at *7, *9.[14]

---

[13]    Accord, e.g., Walker v. Schult, 717 F.3d 119, 127 (2d Cir. 2013); Gaston v. Coughlin, 249
F.3d 156, 166 (2d Cir. 2001).

[14]    Accord, e.g., Myers v. City of N.Y., 11 Civ. 8525, 2012 WL 3776707 at *7 (S.D.N.Y. Aug.
29, 2012) ("A detainee who . . . is housed for a sustained period of time in filthy conditions,
may state a claim for unconstitutionally unsanitary conditions; however, courts have only
found such claims in situations that lasted at least for multiple days."); Kee v. Hasty, 01 Civ.
2123, 2004 WL 807071 at *26 n.24 (S.D.N.Y. Apr. 14, 2004) ("The Eighth Amendment is
generally not violated, however, where unsanitary conditions are temporary."); McNatt v.
Unit Manager Parker, No. 99CV1397, 2000 WL 307000 at *4 (D. Conn. Jan. 18, 2000);
Odom v. Keane, 95 Civ. 9941, 1997 WL 576088 at *4 (S.D.N.Y. Sept. 17, 1997)
(Sotomayor, D.J.); see, e.g., Burkholder v. Newton, 116 F. App'x 358, 363 (3d Cir. 2004)
("It is questionable if having . . . a toilet that backs up sometimes is really an 'atypical and
significant hardship . . . in relation to the ordinary incidents of prison life.'"); Smith v.
Copeland, 87 F.3d 265, 269 (8th Cir. 1996) ("[T]he length of time a prisoner is subjected to
harsh conditions is a critical factor in our analysis. Conditions such as a filthy cell that may
be tolerable for a few days are intolerably cruel for weeks or months." (citation omitted));
Rocha v. Zavaras, No. 10-cv-00357, 2011 WL 1158003 at *11 (D. Colo. Feb. 23, 2011)
("Certain factual situations can meet the standard for a conditions of confinement claim;
however, most of these cases concern . . . the prisoner being exposed to his own excrement
or urine in close proximity for a number of days much greater than four."), report & rec.
adopted, 2011 WL 1154636 (D. Colo. Mar. 29, 2011); see also, e.g., Benjamin v. Fraser, 343
F.3d 35, 55 (2d Cir. 2003) ("Since our review of the record supports the conclusion that such
problems were isolated, we affirm the district court's finding that the plumbing conditions
are not unconstitutional."), overruled on other grounds by Caiozzo v. Koreman, 581 F.3d 63
(2d Cir. 2009).

Florio was exposed to waste only for brief periods; it appears that his total exposure was less than a few hours. (See pages 1-2 & n.2 above.) While no doubt unpleasant, these incidents are insufficiently continuous or chronic to withstand defendants' motion to dismiss. See, e.g., Myers v. City of N.Y., 2012 WL 3776707 at *6-7 ("The only place to sit in the cell was on 'a urine and filth laden floor' . . . . [Plaintiff] alleges that his confinement in the holding cell lasted approximately 16 hours, and he makes no claim that the unsanitary conditions continue in the cell in which he is now placed. Discomfort of this short duration does not rise to the level of a constitutional violation."); Wyland v. Brownfield, Civ. No. 08-1601, 2011 WL 5445305 at *1, *5 (W.D. Pa. Nov. 9, 2011) ("Defendant . . . required [plaintiff] to clean . . . backed up sewage, without protective gloves, a mask and/or proper cleaning equipment. Plaintiff avers that this caused 'severe skin irritation and pain.' . . . With regard to the objective prong, simply stated, . . . having to clean a moldy shower with backed up sewage without gloves or a mask on [one] single occasion simply do[es] not give rise to a substantial risk of serious harm or challenge common standards of decency."); Ortiz v. Dep't of Corr., 2011 WL 2638137 at *8 ("[P]laintiff alleges: (1) that he was exposed to a sewage overflow for an unspecified number of hours on December 3, 2007; (2) that he awoke to a second overflow on December 8, 2007, and was moved later that day, and (3) that a third overflow occurred on the night of December 13, 2007 which resulted in plaintiff being moved elsewhere. In each of these incidents, plaintiff was only exposed to waste for a relatively small number of hours; it appears that his total exposure was probably less than 24 hours. Although unpleasant, these incidents are simply too limited to withstand a motion to dismiss.").[15/] Moreover, the injury Florio alleges is simply too

---

[15/]   Accord, e.g., Smith v. Copeland, 87 F.3d at 268-69 (no Eighth Amendment violation where prisoner "was subjected to an overflowed toilet in his cell for four days" and "was 'made to endure the stench of [his] own feces and urine' for those four days"); Whitnack v. Douglas
(continued...)

minor to state an Eighth Amendment claim.[16]

---

[15] (...continued)
Cnty., 16 F.3d 954, 958 (8th Cir. 1994) (no Eighth Amendment violation where "the intolerable conditions lasted not more than 24 hours before the availability of adequate cleaning supplies would make them tolerable"); Wang v. Vahldieck, No. 09-CV-3783, 2012 WL 119591 at *9 (E.D.N.Y. Jan. 9, 2012) ("[P]laintiff alleges that she was detained for a maximum of six and a half hours in a dirty cell containing urine, cockroaches and used bathroom tissue . . . . Such temporary exposure, though perhaps quite unpleasant for [plaintiff], does not rise to the sort of conduct held 'repugnant to the conscience of mankind.'"); Neil v. Schlueter, Civ. No. 09-4136, 2011 WL 2971930 at *7 (E.D. La. June 30, 2011) ("The Complaint itself contends that all of his allegations occurred on March 8, 2008. As a result, the Plaintiff was not confined in the cell with feces for a sufficient period to maintain a conditions of confinement claim."), report & rec. adopted, 2011 WL 2971880 (E.D. La. July 21, 2011); Prellwitz v. Anderson, Civ. No. 07-2120, 2007 WL 2033804 at *2 (D. Minn. July 12, 2007) ("He has alleged only that there was waste water on the floor of his cell for three hours, and that he had to endure the odor of an inoperable toilet for six hours. While the incident described in the complaint was doubtlessly offensive to Plaintiff, the Court finds that even if he could prove the incident occurred exactly as he has described it, there was no violation of his federal constitutional rights."); Muhammad v. Wilson, No. 05 C 743, 2006 WL 2413710 at *2 (N.D. Ill. Aug. 16, 2006) (Plaintiff "reported the conditions of his cell on November 15, 2004. The plumbing was temporarily repaired on November 18, 2004 and completely repaired on November 20, 2004, seven days after [plaintiff] was placed in the cell. . . . Although the broken plumbing was an inconvenience to [plaintiff], it did not amount to a constitutional violation."); Burton v. Evans, No. 01 C 3328, 2002 WL 832590 at *5 (N.D. Ill. May 2, 2002) ("Plaintiff[] claim[s] that his plumbing malfunctioned and was not repaired promptly, forcing him to live in a cell without working plumbing and to breathe raw sewage for over 36 days. . . . Any malfunctioning of plaintiff's plumbing was indeed unfortunate, but once again, the problem does not rise to the level of a constitutional violation."); Odom v. Keane, 1997 WL 576088 at *4 ("The first and second claims arose on July 10, 1995, when plaintiff was placed in a cell that (1) was unsanitary, and (2) did not have a working toilet. . . . The first two claims are insufficient to establish an Eighth Amendment violation because of the very short time these conditions existed and were endured by plaintiff. Indeed, both of these conditions were rectified by the end of the day."); Evans v. Fogg, 466 F. Supp. 949, 950 (S.D.N.Y. 1979) ("To be kept in a refuse-strewn cell for 24 hours and in a flooded cell . . . for two days is a rough experience, but, since neither condition persisted for more than a limited period of time, it cannot be said that the condition amounted to cruel and unusual punishment.").

[16] See, e.g., Partak v. Behrle, No. 09-CV-1256, 2011 WL 7629500 at *17 (N.D.N.Y. Sept. 12, 2011) ("[T]he shower drain being clogged for three days is unpleasant, inconvenient, and even if plaintiff got athletes foot as a result, does not rise to the level of a denial . . . sufficient to violate the Eighth Amendment."), report & rec. adopted, 2012 WL 1037950 (N.D.N.Y. Mar. 27, 2012); Purdie v. City of N.Y., 10 Civ. 5802, 2011 WL 1044133 at *3
(continued...)

14

Accordingly, Florio's allegations do not rise to the level of a serious risk of substantial harm and are insufficient to satisfy the objective prong of an adequately pled Eighth Amendment violation.

## 2.      The Eighth Amendment's Subjective Requirement

Even if Florio could satisfy the objective prong, which he cannot, his claim would nevertheless fail because he does not sufficiently allege that defendants were deliberately indifferent. Florio fails to allege that Deputy Warden Canty or Officer Leach knew of a substantial risk to Florio's health and safety, or were aware of facts from which they could have inferred that there was a substantial risk of serious harm, and that they failed to take reasonable actions to abate the risk.

Florio claims that defendants were deliberately indifferent to his health and safety by waiting approximately ten to thirty minutes after being alerted of the overflow to release him from his cell. (See pages 1-2 & n.2 above.)  Florio also claims that defendants were deliberately indifferent by having him clean the cell with inadequate cleaning gear and without training. (Dkt.

---

<u>16/</u>      (...continued)
(S.D.N.Y. Mar. 15, 2011) ("A skin rash is generally insufficient to meet the objective requirement of a sufficiently grave and serious condition giving rise to a deliberate indifference claim."); Thompson v. Carlsen, No. 08-CV-0965, 2010 WL 3584409 at *14 (N.D.N.Y. Aug. 16, 2010) ("dry, cracked skin and athlete's foot fungus alleged by plaintiff is not the type of 'injury'" that gives rise to a valid Eighth Amendment claim), report & rec. adopted, 2010 WL 3584396 (N.D.N.Y. Sept. 7, 2010); Dolberry v. Levine, 567 F. Supp. 2d 413, 418 (W.D.N.Y. 2008) ("Although plaintiff does allege that he suffered a skin rash due to the lack of showers, that is a de minimis injury that does not give rise to a[n Eighth Amendment] claim."); Swindell v. Supple, 02 Civ. 3182, 2005 WL 267725 at *7 (S.D.N.Y. Feb. 3, 2005) (plaintiff's "excessive itching, scratching, soreness from scratching, and cracked skin" are not medical conditions "of such an urgent and substantially painful nature as would satisfy the objective prong of the deliberate indifference standard"); Troy v. Kuhlmann, 96 Civ. 7190, 1999 WL 825622 at *13 (S.D.N.Y. Apr. 15, 1999) ("[P]laintiff's claims relating to two rashes are insufficient to create an objectively serious medical need as required by the Eighth Amendment.").

No. 2: Compl. at p. 5.)[17] Florio's allegations are insufficient to establish deliberate indifference as

his own description of the events shows that prison officials acted reasonably to alleviate the

unsanitary conditions. See Ortiz v. Dep't of Corr., 2011 WL 2638137 at *9 ("There is a clear

difference between cases where defendants allegedly knew about unsanitary conditions but did

nothing and cases where officials actually acted to resolve or alleviate the problem, as they are

alleged to have done here. The complaint's specific factual allegations demonstrate that defendants

repeatedly took steps to alleviate plaintiff's exposure to the overflowing toilet." (citation omitted)).

Specifically, as to the duration of time he spent in his cell with sewage overflow,

Florio alleges that in both incidents he was released ten to thirty minutes after the overflow began

and officers were alerted. (See pages 1-2 & n.2 above.) This brief period is insufficient to establish

deliberate indifference, as courts have found that prison officials were not deliberately indifferent

when they took hours to release prisoners from cells with overflowing toilets, or provided plungers

---

[17]    Florio does not allege that overflowing toilets on 9-lower were a longstanding, pervasive,
or well-documented problem prior to the April 13, 2012 incident. In fact, Florio expressly
states that prison officials first learned "about the inad[e]quate plum[]bing" on April 13,
2012, and that Deputy Warden Canty first learned about it when Florio told her on April 16,
2012. (Compl. at p. 5.) Compare, e.g., Ortiz v. Dep't of Corr., 08 Civ. 2195, 2011 WL
2638137 at *9 (S.D.N.Y. Apr. 29, 2011) (analyzing subjective prong noting "plaintiff claims
that the defendants 'all knew [the backed-up toilet in plaintiff's cell] was an on going
problem, and did nothing about it'"), report & rec. adopted, 2011 WL 2638140 (S.D.N.Y.
July 5, 2011). Even if Florio made such an allegation, in light of the short time between the
incidents and the fact that Florio does not allege that his exposure to human waste persisted
beyond the cleanup of the first overflow, prison officials' knowledge of the incident on April
13, 2012 would not suffice to establish a problem that could be considered longstanding or
pervasive on April 20, 2012. See, e.g., Ortiz v. Dep't of Corr., 2011 WL 2638137 at *9
("While the Second Circuit has stated that it was 'unwilling to adopt as a matter of law the
principle that it is not cruel and unusual punishment for prison officials knowingly to allow
an area to remain filled with sewage and excrement for days on end,' the conditions to which
plaintiff was subjected here did not last 'for days on end.' Five days passed between each
incident, and the exposure did not last for an entire day in any of the incidents." (citation
omitted)).

and cleaning supplies but never released the prisoners at all. See, e.g., Ortiz v. Dep't of Corr., 2011
WL 2638137 at *9 ("The complaint's specific factual allegations demonstrate that defendants
repeatedly took steps to alleviate plaintiff's exposure to the overflowing toilet. . . . [W]ithin hours
of the first incident, plaintiff was moved. . . . In the second incident plaintiff describes, the entire
unit was moved to the gym.").[18] Further, given that Florio claims there were overflowing toilets in
approximately twenty other cells on 9-lower (see pages 1-2 above), Florio fails to allege any facts
to show that the ten to thirty minute delay was intended to prolong his exposure to the sewage, as
opposed to avoiding the security risks that undoubtedly would be caused by simultaneously
releasing over twenty prisoners immediately upon learning their toilets were overflowing, without
for example "securing the area." (Compl. at p. 4.)[19]

---

[18]    See also, e.g., Lollis v. Page, No. 07-cv-4067, 2008 WL 853561 at *1, *4 (W.D. Ark. Mar.
        27, 2008) ("no genuine issues of fact as to whether defendants were deliberately indifferent
        to the risk of harm to Plaintiff posed by the overflowed toilet" where approximately 10 to
        15 minutes after being notified, defendants gave plaintiff cleaning supplies but did not
        release him from the cell); cf., e.g., Odom v. Keane, 95 Civ. 9941, 1997 WL 576088 at *4
        (S.D.N.Y. Sept. 17, 1997) (Sotomayor, D.J.) (no Eighth Amendment violation for
        "malfunctioning of the toilet" and "unsanitary" cell where "these conditions were rectified
        by the end of the day"); Neal v. Clark, 938 F. Supp. 484, 486 (N.D. Ill. 1996) (no Eighth
        Amendment violation for faulty plumbing that caused the toilet's contents not to "leave the
        bowl when [plaintiff] flushed it" where plaintiff "told a correctional officer about the toilet
        problem, and the next day the officer gave [plaintiff] a plunger for the toilet").

[19]    See, e.g., Hendon v. Baroya, No. 05 cv 01247, 2013 WL 3243662 at *4 (E.D. Cal. June 26,
        2013) ("'Sometimes, an inmate will dirty his cell . . . by purposely causing the cell toilet to
        overflow and flood the cell. When this occurs, the inmate is taken out of his cell . . . .'");
        Lollis v. Page, 2008 WL 853561 at *4 ("Plaintiff's cell mate . . . placed an object in the
        commode causing the toilet to overflow so that the Plaintiff and he could get out of the
        cell."); see also, e.g., Brown v. Hickman, Civ. No. 06-3035, 2007 WL 2806711 at *10 (W.K.
        Ark. Sept. 25, 2007) (prisoner purposely overflowing toilet); Loeb v. Felker, No. CIV 04-
        0730, 2007 WL 677634 at *3 (E.D. Cal. Mar. 1, 2007) (same), report & rec. adopted, 2007
        WL 951774 (E.D. Cal. Mar. 28, 2007); cf., e.g., Feliz-Ayala v. Semple, No. 10cv696, 2012
        WL 1946068 at *7 (D. Conn. May 30, 3012) ("It is well established that prison officials must
        be given leeway to make administrative decisions when matters of security are at issue. . .
        . [The DOC Coordinator of Training] avers that it was appropriate for [the lieutenant] to
                                                                                      (continued...)

As to the inadequate cleanup supplies and lack of training after the first overflow, Florio states that he and the other 9-lower inmates were furnished with "gloves, dustpans, mopbuckets, and one vacuum cleaner" to clean their cells. (Compl. at p. 4.) Again, these factual allegations are insufficient to establish deliberate indifference; rather, they establish that prison officials did not require Florio to occupy a sewage-filled cell, but instead allowed him to clean the cell before reoccupying it and facilitated the cleanup by providing limited supplies. See, e.g., Ortiz v. Dep't of Corr., 2011 WL 2638137 at *1, *9 (finding plaintiff failed to "sufficiently allege that defendants were deliberately indifferent" where, on two occasions, plaintiff was permitted to clean his cell but "was not given appropriate equipment (an unspecified 'mask' and gloves)" after "sewage overflow had flooded his cell" and "the sewage touched his feet"); Odom v. Keane, 1997 WL 576088 at *4 ("Defendants' same day response belies plaintiff's assertion that his complaints fell on deaf ears. Plaintiff acknowledges that he cleaned his cell himself on [the day of the incident], using soap and personal clothing.").[20] Indeed, courts regularly reject Eighth Amendment claims based

---

[19]    (...continued)
keep [the inmate] in the cell prior to and during the extraction because there was no safe way to remove him from the cell.").

[20]    See also, e.g., Lollis v. Page, 2008 WL 853561 at *4 ("Plaintiff maintains the toilet overflowed at 4:15 p.m. on June 24, 2007 spilling water, urine, fecal matter, and paper on the floor. Plaintiff indicates Defendant was notified of the overflow at that time. At 4:25 or 4:30 p.m. Defendant gave Plaintiff and his cell mate a plunger and a 'squeege.' Plaintiff states that when Defendant returned . . . there were 'gallons' of water on the floor. Plaintiff does not indicate that he was forced to sleep in the contaminated cell or eat any other meals there and does not indicate when he was able to clean his cell. . . . Defendant responded to the notice that the toilet had overflowed and supplied cleaning materials to Plaintiff . . . . We find no genuine issues of fact as to whether defendants were deliberately indifferent to the risk of harm to Plaintiff posed by the overflowed toilet." (citations omitted)); Wesolowski v. Kamas, 590 F. Supp. 2d 431, 434 (W.D.N.Y. 2008) ("[P]laintiff's complaints, concerning the prison's failure to provide him with specific cleaning supplies or the magnitude of its response to an overflowed toilet elsewhere on the cell block, represent minor inconveniences of prison life which 'are part of the penalty that criminal offenders pay for their offenses
(continued...)

on allegedly inadequate cleaning supplies. See, e.g., Wyland v. Brownfield, Civ. No. 08-1601, 2011 WL 5445305 at *5 (W.D. Pa. Nov. 9, 2011); Ortiz v. Dep't of Corr., 2011 WL 2638137 at *9; Wesolowski v. Kamas, 590 F. Supp. 2d at 435.

        Finally, with regard to the foot fungus Florio alleges was caused by his exposure to the sewage, there is no allegation that Florio was prevented from bathing or washing his clothes and shoes after either incident, or that the fungal infection went untreated. To the contrary, Florio saw a doctor just three days after the April 20, 2012 incident. (Compl. Ex. G: 4/23/12 Health Servs. Report; see also page 3 above.) See, e.g., Wyland v. Brownfield, 2011 WL 5445305 at *1, *5 ("Plaintiff also alleges that his Eighth Amendment rights were violated when, on one occasion, Defendant . . . required him to clean . . . backed up sewage, without protective gloves, a mask and/or proper cleaning equipment. Plaintiff avers that this caused 'severe skin irritation and pain.' . . . Plaintiff does not allege that he was prevented from . . . washing his hands after cleaning the shower, or that the allegedly painful rash was untreated.").[21/]

        Accordingly, Florio's complaint does not sufficiently plead deliberate indifference and thus fails to satisfy the subjective prong of an Eighth Amendment claim.[22/]

---

[20/]   (...continued)
        against society.'"), aff'd, 409 F. App'x 476 (2d Cir. 2011).

[21/]   Cf., e.g., Ortiz v. Dep't of Corr., 2011 WL 2638137 at *9 (Plaintiff "does not sufficiently allege that defendants were deliberately indifferent. . . . When plaintiff became sick from cleaning waste, prison officials let him leave his cell and sit in the dayroom. In the second incident plaintiff describes, the entire unit was moved to the gym.").

[22/]   Because Florio's allegations are insufficient to establish either the objective or subjective requirement of an Eighth Amendment claim, the Court need not address defendants' argument (Dkt. No. 15: Defs. Br. at 11-14) that Florio failed to adequately allege defendants' personal involvement. See, e.g., Rosario v. New York City, 12 Civ. 4795, 2013 WL 2099254 at *5 n.10 (S.D.N.Y. May 15, 2013).

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss (Dkt. No. 14) is

GRANTED and the case is dismissed.

SO ORDERED.

Dated:     New York, New York
          July 22, 2013

                              **Andrew J. Peck**
                              United States Magistrate Judge

Copies to:    Nicholas A. Florio (Mail)
             Serena M. Longley, Esq. (ECF)